# United States District Court
# For the Northern District of Texas
# Wichita Falls Division

Eno-obong Okon

Ndongesit Okon

**Plaintiffs**

V.                                              CIVIL ACTION NO: 7:25-cv-0042-O-BP

Brice Byrd.                                     **JURY DEMANDED**

Michael Sheets

Texas Department of Criminal Justice

**Defendants**

## PLAINTIFFS FIRST AMENDED COMPLAINT

### 1. PRELIMINARY STATEMENT

1.1 Plaintiffs demand a jury for any and all issues triable by a jury. This action seeks compensation and damages for injuries suffered by the Plaintiffs due to the Defendants unlawfully detaining the Plaintiffs against their will in a Maximum Security prison ( James V. Allred Unit.).

1.2 Plaintiffs bring forth cause of action pursuant to 42 U.S.C § 1983 for violations of the United States Constitution and the laws of the United States as a result of the unlawful and illegal deprivation of Plaintiffs

right to Liberty when the Defendants unlawfully detained them in a Maximum Security prison for no just cause.

## 2. JURISDICTION

2.1 Jurisdiction is invoked pursuant to 28 U. S. C § 1331.

## 3. VENUE

3.1 Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## 4. PARTIES

4.1 Plaintiffs are employees of the 3rd Defendant and reside in Wichita Falls, Texas

4.2. Defendant Brice Byrd is a Correctional Sergeant of the Texas Department of Criminal Justice currently working at James V. Allred Unit, 2101 FM 369, Iowa Park, TX 76367 who, at all times relevant to this action, was acting under the color of law and within the scope of his employment. Defendant may be served at Texas Department of Criminal Justice, James V. Allred Unit, 2101 FM 369, Iowa Park, TX 76367.

4.3 Defendant Michael Sheets is a Correctional Officer with the Texas Department of Criminal Justice currently working at James V. Allred Unit, 2101 FM 369, Iowa Park, TX 76367 who, at all times relevant to this action, was acting under the color of law and within the scope of his employment. Defendant may be served at Texas Department of Criminal Justice, James V. Allred Unit, 2101 FM 369, Iowa Park, TX 76367.

4.4 The Texas Department of Criminal Justice a governmental unit existing under the laws of the State of Texas. Defendant Texas

Department of Criminal Justice may be served by serving its registered office at Texas Department of Criminal Justice, James V. Allred Unit, 2101 FM 369, Iowa Park, TX 76367.

## 5.0 STATEMENT OF FACTS

5.1   The Plaintiffs started working as Correctional Officers with the Texas Department of Criminal Justice, James V. Allred Unit in 2024.

5.2.  They were posted to work in the GP department at the James V. Allred Unit.

5.3.  The Plaintiffs have never had any disciplinary issues since they commenced work with the Texas Department of Criminal Justice as Correctional Officers.

5.4   On March 28th, 2025 the Plaintiffs showed up at work at the James V. Allred Unit and were posted to work at 7 Building. Plaintiff Eno-obong Okon was posted to 7 I Pod while Plaintiff Ndongesit Okon was posted to 7G pod.

5.5.  7 Building houses inmates with G4 classification. G4 inmates are deemed violent and a thrust proof vest must be worn before entering and working in the building.

5.6 Two Officers are usually assigned to the Pod. One being the Picket Control Officer and the other being the Rover.

5.7 The Picket Officer works in an enclosed control room where all access to the doors in the Pod are situated.

5.8 The Picket Officer is by policy not allowed to leave the Picket Control room for whatever reason except properly relieved by a relieving Officer.

5.9 The Picket Officer and the Rover are supposed to switch after 6 hours.

5.10 Plaintiff Eno-obong Okon was assigned to work with Officer Pruitt as his Rover while Plaintiff Ndongesit Okon was assigned to work with Defendant Sheets as his Rover.

5.11 When Plaintiff Eno-obong Okon commenced work in the Picket Control and Officer Pruitt brought him the daily paperwork, Plaintiff Eno-obong Okon observed that Officer Pruitt had filed out his part of the paperwork which by policy was supposed to be done after he had switched with Plaintiff Eno-obong Okon in the Picket.

5.12 At about 3:pm on March 28, 2025 Plaintiff Eno-obong Okon did notify Officer Pruitt while he was doing rounds that they ought to have switched since 12:30pm and he assured him he would return very soon to switch with him.

5.13 Officer Pruitt then left the Pod and went to the desk where he sat with Defendant Brice Byrd who was the Sergeant assigned to 7 Building that day.

5.14 About an hour later Officer Pruitt returned to the 7 I Pod and went to 2 Section ordering Plaintiff Eno-obong Okon to open the Section door. Plaintiff Eno-obong Okon beckoned Officer Pruitt to come to the Picket door so they could have a conversation but he refused and continued to tell him to open the Section door which he did.

5.15 Observing the attitude of Officer Pruitt, Plaintiff Eno-obong Okon realized Officer Pruitt was not willing to switch with him in the Picket to even afford him the opportunity to warm up his food which he had brought to work.

5.16 At this point Plaintiff Eno-obong Okon called Defendant Brice Byrd who was the Sergeant on the desk and the building's supervisor for the day to inform him about the attitude of Officer Pruitt who was unwilling to switch with him despite having signed the paperwork indicating he was working in the Picket from 1pm before bringing the paperwork to Plaintiff Eno-obong Okon.

5.17 That Plaintiff Eno-obong Okon did inform Defendant Brice Byrd that he had been in the Picket for more than ten hours without a break nor an opportunity to even warm up his food despite the policy providing for the Picket Officer and Rover to switch after 6 hours.

5.18 That despite the fact that TDCJ policy provides for Officers to switch after 6 hours, Defendant Brice Byrd told Plaintiff Eno-obong Okon that he didn't want someone like him working on his floor and that he needed Officer Pruitt to be on the floor because he was comfortable with him.

5.19 Shocked by this attitude of his supposed supervisor Defendant Brice Byrd who showed he didn't care if Plaintiff Eno-obong Okon had any meal or water for the entire day and refusing to follow policy and let him switch after 10hrs in the Picket, Plaintiff Eno-obong Okon called the Lieutenant's office.

5.20 He explained to the Lieutenant that he had been stuck in the Picket for more than 10 hours when Officer Pruitt assigned to work with him ought to have switched with him since 12:30.

5.21 Plaintiff Eno-obong Okon also informed the Lieutenant that he had complained to Defendant Brice Byrd the Sergeant and Supervisor for 7 Building that day and he told him point blank he didn't want someone like him on the floor and that he wanted him up in that Picket the whole shift.

5.22 The Lieutenant told Plaintiff Eno-obong Okon not to worry that he would take care of the situation.

5.23 Few minutes after plaintiff Eno-obong Okon's call to the Lieutenant, he received a call in the Picket phone from Defendant Brice Byrd.

5.24 Defendant Brice Byrd asked him why he called the Lieutenant and before he could say anything, he proceeded to warn him that if he proceeds to switch from the Picket with Officer Pruitt that he would ensure he doesn't work in 7 Building again or any other building on B side.

5.25 Defendant Brice Byrd made a lot of threatening statements to Plaintiff Eno-obong Okon before hanging up the phone.

5.26 That Plaintiff Ndongesit Okon too had difficulty getting Defendant Sheets to switch with him in the Picket. That it was after Plaintiff Ndongesit Okon threatened to report to the Major who was coming to his pod to do rounds that Defendant Sheets agreed to switch with him in the Picket.

5.27 That at about 4:30 pm or thereabout Plaintiff Ndongesit Okon came to Pod 7 I Pod where Plaintiff Eno-obong Okon was posted to do a round. That Plaintiff Eno-obong Okon told him to please return to the desk and tell Defendant Brice Byrd to send Officer Pruitt who was sitting at the desk with Defendant Brice Byrd to the Picket to switch with him as the Lieutenant advised.

5.28 It was after Plaintiff Ndongesit Okon went to the desk to talk to Defendant Brice Byrd that he eventually sent Officer Pruitt to come to the Picket to switch with Plaintiff Eno-obong Okon.

5.29 When Plaintiff Eno-obong Okon got to the desk, Defendant Brice Byrd ordered him and Plaintiff Ndongesit Okon to go feed the inmates in 7 I Pod and 7 H Pod lockdown sections and they complied with and excuted the order without issue.

5.30 After feeding 7I and 7H lockdown sections, Defendant Brice Byrd ordered them to go to 7G 2 Section and put some inmates who were out of their cells for shower back into their cells and thereafter feed 7G Pod 2 Section.

5.31 That Plaintiffs complied with this order after which Plaintiff Ndongesit Okon went to 7 G pod 1 Section to put the inmates back to their cells while Plaintiff Eno-obong Okon proceeded to feed 7G Pod 2 Section.

5.32 Upon completion of feeding, Plaintiff Eno-obong Okon let the remaining inmates who were supposed to shower out to take their shower.

5.33 After this, Plaintiffs went to 7 G Pod 3 section to put all inmates in the section into their cells.

5.34 After putting all the inmates in 7G pod 3 section back to their cells, Plaintiffs proceeded to exit from 7 G pod.

5.35 Defendant Michael Sheets who was the Picket Officer in 7G Pod did not open the Sallyport door for the Plaintiffs to exit the pod instead he informed them that Defendant Brice Byrd wanted them to put the inmates in 7G Pod 2 Section who were done with their showers back into their cells.

5.36 Plaintiffs obeyed this order and went back into 7G Pod 2 Section to put those inmates into their cells. There were two aggressive inmates who refused to return to their cells and instead went into the shower insisting they never had the chance to shower and needed to take their shower.

5.37 That Plaintiffs did order the inmates to leave the shower but inmates refused the order and instead became aggressive stating they had a right to shower.

5.38 Confronted with the aggressive inmates, Plaintiffs did try to deescalate the situation by telling the inmates they would let them shower but they should be ready to go back to their cells when Plaintiffs returned to the section.

5.39 This being done, Plaintiffs went to the section door to leave the section but the Defendant Michael Sheets would not open the door.

5.40 That Plaintiffs signalled Defendant Michael Sheets to open the door and let them out of the section. Plaintiffs were shocked when he said "No" through the section communication system.

5.41 Defendant Michael Sheets further told Plaintiffs that Defendant Brice Byrd ordered him not to let them out of the section until they went up and got those inmates out of the showers.

5.42 That Plaintiffs tried to explain to Defendant Michael Sheets that the inmates were aggressive and Plaintiffs had already told them they would be back in a while to put them in their cells after they returned the multiple inmates in the day room in 7I and 7H pods back to their cells but Defendant Michael Sheets still refused to open the Section door and said " I won't let y'all out".

5.43 That Plaintiffs tried all reasonable efforts to get Defendant Michael Sheets to open the door and let them out of the Section but he refused stating Plaintiffs will have to remain in the section till the inmates were out of the shower and that he was acting on the orders of Defendant Brice Byrd.

5.44 That at this point Plaintiff Eno-obong Okon did inform Defendant Michael Sheets that he was unlawfully detaining Plaintiffs in the section as they are not convicted inmates but Correction Officers and he responded by stating that " he knew".

5.55 Plaintiff Eno-obong Okon further did inform Defendant Michael Sheets that he was holding Plaintiffs against their will by refusing to let them out of the section and he again stated that " he knows".

5.56 Having tried all entreaties to get Defendant Sheets to let Plaintiffs out of the section and coming to the sad reality that he would not let Plaintiffs out of the section, Plaintiff Eno-obong Okon called Defendant Brice Byrd on the Unit radio.

5.57 That Plaintiff Eno-obong Okon called Defendant Brice Byrd multiple times on the radio but he never responded one time despite having a radio in his possession.

5.58 Plaintiff Eno-obong Okon even requested Defendant Brice Byrd to come to 7G 2 Section where Plaintiffs were being detained but he neither answered the radio nor showed up.

5.59 At this point in time, Plaintiffs became extremely traumatized because they didn't know what else to do to get out of the section other than to initiate Incident Command System (ICS).

5.60 That Plaintiff Ndongesit Okon initiated the ICS. It was after the ICS was initiated and Sgt. Gutierrez, 8 Building Supervisor responded to it that Defendant Brice Byrd came to 7G Pod 2 Section and ordered Defendant Michael Sheets to open the Section door.

5.61 Plaintiffs have never been convicted of any crime by any Judge nor jury to necessitate their being stripped their liberty and detained in a Maximum Security prison against their will.

5.62 That Plaintiffs went to the Texas Department of Criminal Justice to work as Correctional Officers and not to be detained as convicted felons.

5.63 That there is no legal basis nor justification for Plaintiffs detention in a Maximum Security prison by the Defendants. Plaintiffs have never

seen nor heard of any Officer being detained against his will in any building in Texas Department of Criminal Justice as was done to them.

5.64 That Plaintiffs were seriously mocked by the inmates in their cells while the Defendants unlawfully detained them and some of the inmates even said " y'all see how we feel when ya lock us up". Defendant Michael Sheets heard all these but yet refused to let Plaintiffs out of the section.

5.65 That Plaintiffs are going through serious mental trauma since the occurrence of this event.

5.66 Plaintiffs have not committed any criminal act against the State of Texas nor the United States to necessitate their unlawful detention by the Defendants.

5.67 As a result of the Defendants unconstitutional actions, Plaintiffs were subjected to extreme stress, phycological and emotional trauma which has permanently affected them. But for Defendants' conduct, Plaintiffs would not have suffered these harms.

5.68 Plaintiffs bring this lawsuit against Brice Byrd, Michael Sheets and Texas Department of Criminal Justice, for depriving Plaintiffs of rights secured under the Constitution and Laws of the United States. Plaintiffs bring this case not only to vindicate their rights but also to hold accountable the government officials who violated them.

## 6.0 APPLICABLE AUTHORITY

### 6.1 The Fourteenth Amendment to the Constitution of the United States of America

provides, in pertinent part:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

### 6.2. 42 U.S. Code §1983 – Civil Action for Deprivation of Rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## 7.0 CLAIMS FOR RELIEF

## A. 42 U.S.C. § 1983 Violations of Plaintiff's Rights Guaranteed by the Fourteenth Amendment – False Imprisonment

7.1 Plaintiffs incorporates all preceding paragraphs by reference.

7.2 Plaintiffs assert a violation of their Due Process rights under the Fourteenth Amendment to be free from unlawful deprivation of their liberty.

7.3 The Fourteenth Amendment also protects against the deprivation of liberty without due process of law.

7.4 Defendant Michael Sheets acting on the orders of Defendant Brice Byrd did deprive the Plaintiffs of their constitutional rights to liberty by unlawfully detaining them in a Maximum Security prison without lawful justification or due process of law.

7.5 Defendant Sheets and Defendant Byrd while acting under the color of law and within the scope of his employment, knowingly and intentionally, or with reckless disregard for the truth, caused the unlawful deprivation of plaintiffs liberty by causing them to be detained against their will in a Maximum Security prison at the James V. Allred Unit.

7.6 As such, Defendants deprived Plaintiffs of their rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment. Defendants also deprived Plaintiffs of due process in violation of the Fourteenth Amendment.

7.8 Furthermore, based upon information and belief, Defendants conspired with co-conspirators, known and unknown, to violate Plaintiffs constitutional rights.

7.9 Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom or usage of any State, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parties injured in an action for redress. Each Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

7.10 The Texas Department of Criminal Justice is liable for the conduct of her Officers which violate the constitutional rights of the Plaintiffs.

## 8.DAMAGES

8.1 Defendants' actions, jointly and severally, deprived Plaintiffs of their protected rights under the United States Constitution and federal law. As a proximate result of Defendants' actions, Plaintiffs have suffered the deprivation of liberty, public humiliation, distress, pain, mental trauma, psychology stress and suffering for which they are entitled to compensatory damages, including damages for mental and emotional distress.

8.2 As a result of Defendants' actions and/or inactions, Plaintiffs seek the following damages, which in the aggregate exceed $20,000,000.00:

- Actual damages;

- Compensatory damages;

- Past and future mental anguish;

- Past and future emotional damages;

- Past and future psychological trauma

- Past and future loss of earning capacity due to mental distress;
- Exemplary damages; and
- All other damages, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

## 9. PUNITIVE DAMAGES

9.1 Plaintiffs incorporates the preceding paragraphs by reference.

9.2 Punitive damages may be awarded in Section 1983 cases when the defendant's conduct involves reckless or callous indifference to the federally protected rights of others. The conduct of the Defendants to intentionally detain the Plaintiffs in a Maximum Security prison without

just cause and due process of law demonstrates a callous and reckless disregard to the constitutional rights of Officers working for the Texas Department of Criminal Justice.

9.3 Defendants Brice Byrd and Michael Sheets acted with malice and with intentional disregard for Plaintiffs constitutional rights for which Plaintiffs are entitled to punitive damages. Such damages would assist in deterring and preventing similar conduct in the future.

## PRAYER

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs respectfully prays that Defendants be cited to appear and answer herein, that upon the trial of this matter, judgment be entered for Plaintiffs against Defendants jointly and severally for the damages described above.

Respectfully submitted,

By: _____

Eno-obong Okon

(For all named Plaintiffs)

1227 Ridgeway Dr, Apt 106

Wichita Falls Texas 76306

(347-740-7529)